UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

00 MAR 10 AM 10: 56

U.S. DISTRICT COURT
N.D. OF ALABAMA

DWANE WOODS,                          )
                                      )
        Plaintiff,                    )
                                      )
vs.                                   )   Civil Action No. CV-99-S-3037-NE
                                      )
MEMBERS OF THE BOARD                  )
OF TRUSTEES OF THE                    )   ENTERED
UNIVERSITY OF ALABAMA,                )
in their official                     )   MAR 10 2000
capacities;[1] FRANK FRANZ,           )
JERRY QUICK, GERRY MOORE,             )
DAVE BROWN, JARWES NAYMAN,            )
and GARY GAILLIARD,                   )
                                      )
        Defendants.                   )

MEMORANDUM OPINION

This action is before the court on defendants' motion to

strike, its motion to dismiss plaintiff's first amended complaint

(Doc. No. 11), and plaintiff's motion to include additional

defendants (Doc. No. 12).[2] Upon consideration of the motions and

pleadings, defendants' motion to strike is due to be denied, its

motion to dismiss is due to be granted in part and denied in part,

---

[1] Plaintiff originally sued the University of Alabama in Huntsville and
members of the Board of Trustees in their official capacities, along with the six
individually name defendants listed above. Defendants' counsel informed this
court that there is no legal entity known as the "University of Alabama in
Huntsville." Rather, it is a constituent division of the Board of Trustees of
the University of Alabama. Construing plaintiff's *pro se* complaint liberally,
this court dismisses the University of Alabama in Huntsville and members of the
Board of Trustees in their official capacities as defendants, and substitutes
"Members of the Board of Trustees of the University of Alabama, in their official
capacities" as some of the proper defendants.

[2] Plaintiff withdrew his motion to change venue to the United States
Congress on March 7, 2000. (Doc. No. 13.)

and plaintiff's motion is due to be denied.

## I. INTRODUCTION AND BACKGROUND

Plaintiff Dwane Woods, an African-American male, was employed by the University of Alabama[3] as a police officer at its Huntsville campus ("UAH") during all times relevant to this lawsuit.  Woods sued the University of Alabama and members of the University of Alabama Board of Trustees, in their official capacities, in October of 1997.  *See Woods v. University of Alabama et al.*, Civil Action No. CV-97-S-2722-NE (N.D. Ala. Oct. 15, 1997) (Smith, J.).  A portion of the memorandum opinion entered by this court on February 17, 1998, summarized the gist of that action:

> Woods presently holds a supervisory position on the second shift [at UAH], and has maintained a good personnel record since his hiring in 1987.  In December of 1996, Woods complained to Jerry Quick, vice president of UAH, about disparate treatment he observed in the punishment of black police officers employed by UAH. Following that complaint, Woods saw Quick in a campus parking lot on January 13, 1997, and, wanting to discuss his complaint, attempted to attract Quick's attention by flashing the head lights of his patrol car.  It worked, but thereafter Quick placed a letter of reprimand in Woods' personnel file for allegedly violating police procedures by flashing his head lights to get Quick's attention.    Later, Woods alleges also that he was required to provide a doctor's excuse explaining an absence from work, even though he had never had to provide such an excuse before.

---

[3] Throughout this opinion, references to the conduct of the University of Alabama, as Woods' employer, will be attributed to the defendants delineated as the members of the Board of Trustees of the University of Alabama.

> Woods filed this lawsuit on October 15, 1997, alleging retaliation in violation of 42 U.S.C. [§] 2000e (Title VII) and violation of 42 U.S.C. § 1981. Woods amended the complaint on December 15, 1997, clarifying his assertion of two § 1981 claims: one for racial harassment and one for retaliatory infringement on his ability to contract free from discrimination based on race.

*Id.* at 1-2 (footnote and citations omitted). The court ultimately dismissed that suit for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6).

Woods applied for the position of Director of Public Safety in the Spring of 1998, following the dismissal of his first lawsuit. (*See* Amended complaint ¶¶ 24, 28.) Jerry Quick, UAH's Vice President for Finance and Administration, interviewed a number of candidates for the position, including Woods. (*See id.* ¶ 41.) Ultimately, the position was awarded to defendant Gary Gailliard. (*See id.* ¶ 35.) Woods subsequently received a letter of reprimand for testifying in a court proceeding while in uniform (*see id.* ¶ 44), as well as an unfavorable performance evaluation (*see id.* ¶ 49).

Woods filed the present *pro se* complaint on November 15, 1999, and amended it the following day. That pleading, which is fifteen pages long, contains a number of statements providing background information on Woods' relationship with UAH. (*See id.* ¶¶ 6-23.)

Also, pages six through fourteen are in memorandum form. Woods
contends he was not promoted in retaliation for his prior filing of
an EEOC charge and judicial complaint. (*See id.* ¶ 33.) He further
alleges unlawful racial harassment in the form of a hostile work
environment. (*See id.* ¶¶ 33, 43.) Woods contends that defendants'
retaliatory and discriminatory conduct violates Title VI of the
Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C.
§ 1981, and 42 U.S.C. § 1983. (*See id.* ¶ 54.) He seeks
declaratory and injunctive relief, along with compensatory and
punitive damages. (*See id.* at page 15.)

Defendants moved to strike portions of plaintiff's amended
complaint, and to dismiss plaintiff's claims on December 9, 1999.
They submitted a plethora of reasons for dismissal, some of which
merit discussion below. Plaintiff moved to amend his complaint on
December 29, 1999, to include his attorney from the previous
lawsuit, Kimberlyn P. Malone, and the Birmingham, Alabama EEOC
office as defendants. Plaintiff asserts that Malone did not
provide effective legal assistance in his first lawsuit. Woods
further contends that the Birmingham EEOC office disregarded the
law and treated him unfairly in its handling of the discrimination

4

charge against defendants.

## II. DISCUSSION

The court opts to address defendants' motion to strike and plaintiff's motion first. Once those matters have been effectively settled, the court will move on to defendants' motion to dismiss.

### A.    Defendants' Motion to Strike

It is well-settled that courts should construe *pro se* complaints liberally. *See generally Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). While plaintiff's pleading does not comply with the requirements of Federal Rule of Civil Procedure 8(a), the error is a harmless one. Accordingly, defendants' motion to strike paragraphs 5-17 and 19-23 of plaintiff's amended complaint is due to be denied. The information contained in those paragraphs merely provides factual background leading up to plaintiff's statement of claims of unlawful retaliation and race discrimination. Further, the court treats pages 6-14 of plaintiff's amended complaint as a (albeit, premature and anticipatory) response to defendants' motion to dismiss. None of the information contained in those pages will be treated as material factual allegations. Rather, it is legal support for those claims.

In short, the factual crux of plaintiff's legal claims against

5

defendants lies in paragraphs 24-56 of the amended complaint.  The
court will concentrate its effort there when ruling on defendants'
motion to dismiss discussed below.

**B.    Plaintiff's Motion to Include Additional Defendants**

Plaintiff's motion to include Malone and the Birmingham EEOC
office as defendants in this action is due to be denied.  The
allegedly unlawful conduct of defendants has no connection to the
conduct of Malone during Woods' previous lawsuit or the Birmingham
EEOC office during investigation of Woods' claims in this lawsuit.

**C.    Defendants' Motion to Dismiss**

1.    **Title VI**

Plaintiff's claims under Title VI are due to be dismissed,
because he has not alleged that the primary objective behind
federal financial assistance to the University of Alabama is the
provision of employment.  *See* 42 U.S.C. § 2000d-3.  Courts are
uniform in requiring such an allegation in support of a claim of
Title VI discrimination.  *See Arline v. School Board of Nassau
County,* 772 F.2d 759, 762 n.8 (11th Cir. 1985); *Otero v. Mesa
County Valley School District No. 51,* 470 F. Supp. 326, 329 (D.
Colo. 1979), *aff'd,* 628 F.2d 1271 (10th Cir. 1980); *Burks v. City
of Philadelphia,* 950 F. Supp. 678, 683 (E.D. Pa. 1996); *Grimes v.*

6

*Superior Home Health Care of Middle Tennessee, Inc.*, 929 F. Supp. 1088, 1094 (M.D. Tenn. 1996); *Ward v. Massachussetts Bay Transportation Authority*, 550 F. Supp. 1310, 1311 (D.C. Mass. 1982).

### 2. The interplay between Title VII, Section 1981, and Section 1983

Woods employs the same factual allegations to assert violations of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. More specifically, Woods argues that defendants' conduct contravened two Title VII provisions: the prohibition against racial discrimination in 42 U.S.C. § 2000e-2(a)(1),[4] and the anti-retaliation provision in 42 U.S.C. § 2000e-3(a).[5] Woods further

---

[4] Title VII makes it unlawful for an employer

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ....

42 U.S.C. § 2000e-2(a)(1). The Supreme Court has interpreted the statute to protect individuals from intolerable and unnecessary harassment in the workplace. *See infra* Section C.2.a.

[5] That statute provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has <u>opposed</u> any practice made an unlawful employment practice by this subchapter [the so-called opposition clause], or because he has made a charge, testified, assisted, or <u>participated</u> in any manner in an investigation, proceeding, or hearing under this subchapter [the so-called participation clause]. [Emphasis supplied.]

42 U.S.C. § 2000e-3(a).

7

contends that such racial discrimination and unlawful retaliation
violates 42 U.S.C. § 1981.[6] Finally, Woods argues that defendants'
Title VII and Section 1981 transgressions violate 42 U.S.C. § 1983,
which provides an action for violations of federal law that are
committed by persons acting under color of state law.[7] Woods'
articulation of his claims in such a manner requires this court to
make certain preliminary remarks and rulings before otherwise

---

[6] That statute, as amended by the Civil Rights Act of 1991, provides:

(a) All persons within the jurisdiction of the United States shall
have the same right in every State and Territory to make and enforce
contracts, to sue, be parties, give evidence, and to the full and
equal benefit of all laws_ and proceedings for the security of
persons and property as is enjoyed by white citizens, and shall be
subject to like punishment, pains, penalties, taxes, licenses, and
exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce
contracts" includes the making, performance, modification, and
termination of contracts, and the enjoyment of all benefits,
privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against
impairment by nongovernmental discrimination and impairment under
color of State law.

42 U.S.C. § 1981.

[7] That statute provides:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper
proceeding for redress. For the purposes of this section, any Act
of Congress applicable exclusively to the District of Columbia shall
be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

8

addressing the merits of Woods' contentions.

First, the issue of sovereign immunity looms in this action, and is potentially dispositive of some of Woods' claims. That doctrine, based on the Eleventh Amendment to the United States Constitution,[8] does not apply in a like manner with respect to Title VII and Section 1981 claims. The Eleventh Amendment applies equally to suits against a state by one of the state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S.Ct. 504, 506-07, 33 L.Ed. 842 (1890). Further, "the Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." *Id.* The above precedent indicates that a plaintiff cannot avoid application of the sovereign immunity

---

[8] The Eleventh Amendment provides that

[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

9

doctrine simply by suing arms of the state, state officials, or state employees, as opposed to the state itself.[9]

While sovereign immunity operates broadly to shield a state, its subdivisions, instrumentalities, and agents from liability, it is not absolute. The Eleventh Circuit recently summarized the three situations in which the Eleventh Amendment will not protect a state from suit:

> The Supreme Court has recognized three situations in which there is a "surrender" of Eleventh Amendment sovereign immunity: (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court; see *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 71 (1985); (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-73, 116 S.Ct. 1114, 1123-32, 134 L.Ed.2d 252 (1996); and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law, *see id.* at 73, 116 S.Ct. at 1132; *Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908).

*Harbert International, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998).

---

[9] In Alabama, a public college or university is deemed to be an arm of the state and, therefore, may be entitled to Eleventh Amendment sovereign immunity. *See Harden v. Adams*, 760 F.2d 1158 (11th Cir.), *cert. denied sub nom. Grimmer v. Harden*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985) (citations omitted). Similarly, members of the Board of Trustees of a state college or university may be entitled to sovereign immunity as an instrumentality of the state. *Harden*, 760 F.2d at 1164 (citation omitted).

10

In this case, the first exception has no application, because defendants have not waived their right to claim sovereign immunity by consenting to suit.  In fact, a large portion of their motion to dismiss seeks to apply the sovereign immunity doctrine.

The second exception, however, operates to strip defendants of sovereign immunity with respect to plaintiff's <u>Title VII</u> claims. In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court held that Congress, pursuant to its powers under section five of the Fourteenth Amendment, validly abrogated sovereign immunity in the Title VII context. *See id.* at 456, 96 S.Ct. at 2671.  The same cannot be said for plaintiff's Section 1981 claims, however.    In *Petterway v. Veterans Administration Hospital,* 495 F.2d 1223 (5th Cir. 1974), the former Fifth Circuit noted that Congress had not abrogated sovereign immunity in the Section 1981 context:

> It is well settled however that a waiver of sovereign immunity must be specific and explicit and cannot be implied by construction of an ambiguous statute.  Section 1981 contains no explicit waiver of sovereign immunity ... but merely a general prohibition of discrimination on racial grounds.

*Id.* at 1225 (citations omitted).[10]

---

[10] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

11

The Supreme Court discussed the third exception to the grant

of sovereign immunity — "when a state official is sued for

prospective injunctive relief to end a continuing violation of

federal law" — in *Papasan v. Allain*, 478 U.S. 265, 106 S.Ct. 2932,

92 L.Ed.2d 209 (1986). It focused on the distinction between

retrospective and prospective relief, as articulated in the Court's

earlier decision in *Ex parte Young*.

> *Young* has been focused on cases in which a violation of
> federal law by a state official is ongoing <u>as opposed to
> cases in which federal law has been violated at one time
> or over a period of time in the past</u>, as well as on cases
> in which the relief against the state official directly
> ends the violation of federal law <u>as opposed to cases in
> which that relief is intended indirectly to encourage
> compliance with federal law through deterrence or
> directly to meet third-party interests sucha
> compensation</u>. As we have noted: "Remedies designed to
> end a continuing violation of federal law are necessary
> to vindicate the federal interest in assuring the
> supremacy of that law. But compensatory or deterrence
> interests are insufficient to overcome the dictates of
> the Eleventh Amendment."

*Id.* at 277-78, 106 S.Ct. at 2940 (quoting *Green v. Mansour*, 474

U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)) (emphasis

supplied). The Eleventh Circuit recently elaborated on those

statements by the Supreme Court, by discussing the limitations on

the *Ex parte Young* exception to sovereign immunity:

> If the prospective relief sought is the functional
> equivalent of money damages, however, *i.e.*, "[i]t is

12

measured in terms of a monetary loss resulting from a
past breach of a legal duty," *Ex parte Young* does not
apply.

Because of the important interests of federalism and
state sovereignty implicated by *Ex parte Young*, however,
the doctrine is not without limitations .... First, the
*Ex parte Young* doctrine applies only to ongoing and
continuous violations of federal law. <u>In other words, a
plaintiff may not use the doctrine to adjudicate the
legality of past conduct</u>. ... Second, in *Idaho v. Coeur
d'Alene Tribe*, the Supreme Court recently said that the
*Ex parte Young* doctrine does not apply where the
equitable relief sought "implicates special sovereignty
interests." 521 U.S. 281, 117 S.Ct. 2028, 138 L.Ed.2d
438 (1997). Thus, if prospective relief would invade a
state's sovereignty as much as an award of monetary
damages would, the action will be barred by the Eleventh
Amendment.

*Summit Medical Associates*, 180 F.3d at 1337 (emphasis supplied)

(other citations omitted).

While Woods seeks monetary, injunctive, and declaratory relief

in this lawsuit, he ultimately seeks to hold defendants liable for

their alleged violations of federal law "at one time or over a

period of time in the past." *Papasan*, 478 U.S. at 278, 106 S.Ct.

at 2940. Woods is attempting to "adjudicate the legality of past

conduct," such as defendants' decisions not to promote him, to

sanction him with a letter of reprimand for testifying in uniform,

and for giving him an unfavorable performance evaluation. *Compare

Summit Medical Associates*, 180 F.3d at 1337 (finding *Ex parte Young*

13

exception to sovereign immunity applicable where plaintiffs sought a declaratory judgment that Alabama's partial-birth and post-viability abortion statutes are unconstitutional).

While it is clear that the members of the Board of Trustees of the University of Alabama are sued in their official capacities, it is not clear whether the other named individuals (Frank Franz, Jerry Quick, Gerry Moore, Dave Brown, Jarwes Nayman, and Gary Gailliard) are sued in their individual or official capacities.[11] Plaintiff's failure to articulate whether the named defendants are sued individually or officially is a moot point, however, because it is clear that his complaint lies against his employer, the University of Alabama. The amended complaint is couched in language that only outlines official acts taken by university employees, such as Quick's duty to interview the candidates for Director of Public Safety and Gailliard's assumption of the Director of Safety position. For sovereign immunity purposes, therefore, the University of Alabama is the real party in interest. See Harbert International, 157 F.3d at 1277 n.3 ("When a state official is made a defendant in a suit, whether it is nominally

---

[11] In fact, four of those six individuals (Franz, Moore, Brown, and Nayman) are not even referenced in the body of Woods' amended complaint. Plaintiff only mentions Quick and Gailliard briefly in the body of the amended complaint. (See Amended complaint ¶¶ 6, 35, 40, 41, 47.) Further, when plaintiff defines the "parties" in his amended complaint, he mentions only the University of Alabama, his employer. (See id. ¶ 4.)

14

brought against him in his official or individual capacity, a court
must determine the real, substantial party in interest.") (emphasis
supplied). Eleventh Amendment sovereign immunity is thus
applicable to all of Woods' Section 1981 claims, and they are due
to be dismissed.

Second, it must be noted that liability under Section 1983 is
premised on proof of the "deprivation of any rights, privileges, or
immunities secured by the Constitution and laws [of the United
States]." 42 U.S.C. § 1983. A cause of action under Section 1983,
therefore, cannot arise unilaterally. Rather, liability under that
statute only follows the establishment of an independent violation
of federal constitutional or statutory law.

This simple proposition is complicated, however, by the fact
that "not all federal statutory ... violations under color of state
law give rise to a § 1983 claim for relief." 1A Martin A. Schwartz
& John E. Kirklin, *Section 1983 Litigation: Claims and Defenses* §
4.1, at 431 (3d ed. 1997). In fact, Title VII violations can only
be pursued through Section 1983 under certain circumstances.

> One of the recurring issues in the lower courts concerns
> the ability to enforce Title VII of the Civil Rights Act
> of 1964 and related constitutional rights under § 1983.
> The issue arose prior to the 1991 Civil Rights Act
> amendments to Title VII as well as after the amendments.
> With regard to preamendment claims, the lower federal
> courts held that the enforcement scheme set forth in

15

> Title VII is the exclusive means for enforcing the
> statutory rights guaranteed by that Act, thereby
> precluding resort to § 1983. These cases reason that a
> contrary ruling would allow a claimant to bypass the
> detailed procedural scheme set forth in Title VII, and in
> some instances, secure relief that is available under §
> 1983 but not Title VII. This would frustrate the
> congressional intent behind Title VII. This analysis
> holds true for post-1991 amendment claims as well.
>
> A related issue that has arisen with great frequency
> is whether constitutional claims related to a Title VII
> claim can be asserted under § 1983. For preamendment
> claims, the lower federal courts consistently ruled that
> constitutional claims can be asserted under § 1983 even
> if the same facts upon which they are based also give
> rise to claims under Title VII. This result too should
> hold true for postamendment claims.

*Id.* § 4.2, at 452-53 (emphasis supplied). Because Woods does not

couple his Title VII claim with a constitutional claim, he cannot

utilize Section 1983 to enforce his Title VII rights. *See*

*Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998) ("Of

course, an allegation of a Title VII violation cannot provide the

sole basis of a § 1983 claim. ... Instead, Arrington satisfies the

first element of § 1983 by alleging that Hightower violated her

Fourteenth Amendment right of equal protection."). Accordingly,

plaintiff's Section 1983 claims are also due to be dismissed.

With the foregoing principles in mind, this court focuses on

whether plaintiff has stated viable Title VII claims of hostile

work environment or retaliation against any of the defendants.

16

### a. Hostile work environment

In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court concluded that "[t]he phrase 'terms, conditions, or privileges of employment' [in 42 U.S.C. § 2000e-2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." *Id.* at 64, 106 S.Ct. at 2404 (quoting *Los Angeles Department of Water and Power vs. Manhart*, 435 U.S. 702, 707, 98 S.Ct. 1370, 1374, 55 L.Ed.2d 657 (1978)). Encompassed within that "spectrum" is the right of individuals to work in an environment that is not discriminatorily hostile or abusive. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). According to the *Harris* court:

> When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.

*Id.* (quoting *Meritor Savings Bank*, 477 U.S. at 65, 106 S.Ct. at 2405) (internal citations omitted). The Eleventh Circuit recently summarized the elements a plaintiff must allege to state a hostile work environment claim:

> (1) the employee must belong to a protected group; (2) the employee must have been subject to unwelcome [racial]

17

harassment; (3) the harassment must have been based on [race]; (4) the harassment must have been sufficiently severe or pervasive to alter the conditions of employment; and (5) there must be a basis for holding the employer liable for the harassment either directly or indirectly.

*Mendoza v. Borden, Inc.*, 158 F.3d 1171, 1175 (11th Cir. 1998) (emphasis supplied). The Supreme Court reiterated in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), that Title VII liability for a hostile work environment "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris*, 510 U.S. at 21, 114 S.Ct. at 370.

A plaintiff must show not only that he subjectively perceived his work environment to be hostile, but also that the conduct creating this environment was sufficiently severe or pervasive to make his perception objectively reasonable:

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* at 21-22, 114 S.Ct. at 370. The *Harris* court went on to pinpoint a number of factors, none of which are dispositive, that

18

aid in determining whether a work environment is hostile to the extent that Title VII is violated:

> These may include the <u>frequency</u> of the discriminatory conduct; its <u>severity</u>; whether it is <u>physically threatening or humiliating, or a mere offensive utterance</u>, and whether it <u>unreasonably interferes with an employee's work performance</u>.

*Id.* at 23, 114 S.Ct. at 371 (emphasis supplied) (concluding that whether a work environment is hostile depends on an analysis of "all the circumstances"). According to the Eleventh Circuit in *Mendoza*, "'[a] hostile environment claim is a single cause of action rather than a sum total of a number of mutually distinct causes of action to be judged each on its own merits ....'" *Mendoza*, 158 F.3d at 1176 (quoting *Vance v. Southern Bell Telephone & Telegraph Company*, 863 F.2d 1503, 1510-11 (11th Cir. 1989)).

Plaintiff claims that defendants, by refusing to promote him, sanctioning him with a letter of reprimand, and giving him a poor performance evaluation, created a racially hostile work environment. (*See* Amended complaint ¶ 43.) Such a conclusory statement, without more factual support, does not state an actionable claim of race discrimination based on a hostile work environment under *Harris*. In short, Woods asserts no facts to support a finding that a racially hostile work environment existed

at UAH.  None of the allegedly discriminatory acts described by Woods could support a jury finding that he was subjected to an objectively hostile work environment.  The three acts underlying Woods' current lawsuit were not sufficiently frequent, severe, threatening, humiliating, or unreasonable to have possibly interfered with Woods' work performance.  The "severe and pervasive" element of a hostile work environment claim is wholly lacking in Woods' allegations.  Because plaintiff misapprehends the nature of a hostile work environment claim, that claim is due to be dismissed as to all defendants.

### b.    Retaliation

Plaintiff's Title VII retaliation claim relating to his failure to receive a promotion survives Federal Rule of Civil Procedure 12(b)(6).  In fact, defendants do not contest that those claims are viable at this stage in the proceedings.[12]  Rather, defendants argue that the claim should be dismissed as to the individually-named defendants.

It is well-established that Title VII does not create personal

---

[12] Defendants do contend, however, that any retaliation claim premised on the letter of reprimand or poor evaluation cannot survive scrutiny under Rule 12(b)(6), because such alleged conduct does not rise to the level of an adverse employment action.  While defendants are technically correct on this point, the court concludes that plaintiff included that factual information to further substantiate his "failure to promote" claim.  As an initial impression, therefore, the court treats such allegations as circumstantial evidence of defendants' unlawful retaliation against plaintiff.

20

liability under circumstances such as those alleged by plaintiff. *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) (noting that every circuit court confronting issue of individual liability under Title VII has concluded that individuals are not liable, because the "remedial scheme [of Title VII] seems so plainly tied to employer, rather than individual, liability"); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."). Accordingly, the retaliation claims against Frank Franz, Jerry Quick, Gerry Moore, Dave Brown, Jarwes Nayman, and Gary Gailliard are due to be dismissed. Plaintiff may proceed with his Title VII retaliation claim against the members of the Board of Trustees of the University of Alabama, in their official capacities.

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this _10th_ day of March, 2000.

_____
United States District Judge

21