UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

01 JUN -6 AM 8: 01

U.S. ... TRICT COURT
N.D. OF ALABAMA

DWANE WOODS,                    )
                                )
     Plaintiff,                 )
                                )
vs.                             )    Civil Action No. CV-99-S-3037-NE
                                )
THE BOARD OF TRUSTEES OF        )
THE UNIVERSITY OF ALABAMA       )
                                )
     Defendant.                 )

ENTERED

JUN   6 2001



## MEMORANDUM OPINION

Plaintiff, Dwane Woods, alleges that his former employer, the

Board of Trustees of the University of Alabama system, subjected

him to unlawful discrimination in violation of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Specifically, he

contends that defendant refused to promote him in retaliation for

complaints of discrimination he filed with the Equal Employment

Opportunity Commission ("EEOC"), and, a civil action he initiated

alleging racial discrimination in the workplace.[1]

The action presently is before the court on the following

motions:  (1) defendant's motion for summary judgment (doc. no.

52); (2) plaintiff's motion for summary judgment (doc. no. 59);

and, (3) defendant's motion to strike plaintiff's evidentiary

---

[1] Plaintiff's amended complaint (doc. no. 2) alleged several claims against
defendant premised upon violations of 42 U.S.C. § 1981, § 1983, and Title VII.
However, this court dismissed plaintiff's § 1981, § 1983, and Title VII racially
hostile work environment claims by an order and memorandum opinion entered on
March 10, 2000 (doc. nos. 14 & 15).

submission and statement of undisputed fact (doc. no. 68).

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally id.* at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court that there is an absence

2

of evidence to support the non-movant's case. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995) *(per curiam).* Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex Corporation,* 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery,* 64 F.3d at 593. The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990).

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman,* 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation,* 43 F.3d 587, 592 (11th Cir.

3

1995) (citation omitted). Moreover, evidence that is merely colorable, see Brown v. City of Clewiston, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, see Peppers v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. See Augusta Iron & Steel Works v. Employers Insurance of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Jeffery, 64 F.3d at 594 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir.

4

1995) (internal marks and citations omitted)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

When presented cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720. The court is required to "relate all material facts in genuine dispute in the light most favorable to the party resisting summary judgment." *Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 24 (1st Cir. 1997) (citing *Sanchez v. Alvarado*, 101 F.3d 223, 225 n.1 (1st Cir. 1996)).

## II. BACKGROUND

The Board of Trustees of the University of Alabama system ("the Board") is an instrumentality of the State of Alabama.[2] It conducts educational programs at three major institutional

---

[2] The Board was established by § 264 of the Alabama Constitution of 1901 and charged with the mission of managing and controlling "the State University."

5

divisions located in Tuscaloosa, Birmingham, and Huntsville.[3] The institutional division located in Huntsville is known as the University of Alabama in Huntsville ("UAH").

Plaintiff, Dwane Woods, is an American citizen of African ancestry who was employed at UAH as a campus police officer from October 19, 1987 through May 17, 2000.[4] He was promoted to the rank of corporal in 1988, and then to sergeant in 1994.[5]

While campus police officers have statewide law enforcement authority, they primarily perform law enforcement and security functions on university property.[6] Their principal duties include enforcing traffic regulations, investigating criminal incidents, making arrests, monitoring campus facilities, and assisting members of the campus community.[7]

Dwane Woods filed an EEOC complaint in January of 1997, alleging that UAH had discriminated against him on the basis of his race, and retaliated against him because he had complained about what he perceived as disparate treatment of UAH's non-white police officers.[8] Following receipt of notice of his right to sue, Woods

---

[3] See Ala. Code § 16-47-1 et seq.

[4] Brown affidavit (doc. no. 56), ¶ 4.

[5] Id., ¶ 6.

[6] Ala. Code § 16-47-10.

[7] Brown affidavit (doc. no. 56), ¶ 3.

[8] See amended complaint (doc. no. 2), ¶ 17; see also Woods v. University of Alabama et al., Civil Action No. CV-97-S-2722-NE (N.D. Ala. Oct. 15, 1997).

6

initiated suit against the Board in this court on October 15, 1997. That action, styled *Woods v. University of Alabama et al.*, Civil Action No. CV-97-S-2722-NE (N.D. Ala. Oct. 15, 1997), was dismissed on February 17, 1998, for Woods's failure to state a claim upon which relief could be granted.

As discussed more fully below, Woods applied for promotion to the position of Director of Public Safety at UAH during the Spring of 1998, following the dismissal of his first lawsuit. He was not selected. Woods now contends that his first federal court action and preceding EEOC complaint motivated defendant to retaliate against him by refusing to promote him to the position of Director of Public Safety.

All law enforcement personnel at UAH are supervised by the Director of the Office of Public Safety. The Director is, in effect, the campus "chief of police."[9] The Director of Public Safety reports directly to the Assistant Vice President for Facilities and Operations, who reports to the Vice President for Finance and Administration. In turn, the Vice President for Finance and Administration reports directly to the President of UAH, who ultimately is accountable to the Board.[10]

---

[9] Brown affidavit (doc. no. 56), ¶ 3.

[10] *Id.*, ¶ 2.

7

During the summer of 1997, Director of Public Safety J.R. Nayman announced his intention to retire on July 31, 1998.[11] David Brown, the Assistant Vice President for Facilities and Operations, was principally responsible for selecting Mr. Nayman's successor.[12] Brown enlisted the assistance of Carolyn Horan — Associate Director for Employment, Compliance, and Compensation in UAH's Human Resources Department — to help in the selection of a new director.[13] Horan advertised the position, and assisted Brown in interviewing potential candidates.

The position was advertised nationally in the *Chronicle of Higher Education*, in over 40 placement offices of various college and universities in the southeastern United States, and on several web sites.[14] Horan also informed two Alabama state police administrator organizations of the vacancy. Finally, the position vacancy was posted locally in UAH's staff employment office, on UAH's human resources web site, and at other locations on campus.[15]

Forty applications were received. Horan conducted a preliminary screening, and narrowed the number of potential

---

[11] Horan affidavit (doc. no. 55), ¶ 4.

[12] *Id.*

[13] *Id.*, ¶ 2.

[14] *Id.*, ¶ 5.

[15] *Id.*

8

candidates for selection to eleven.[16]  Horan and Brown then jointly

reviewed the records of those eleven applicants, and selected the

following five persons for interview:

> (1)  Gary Gailliard, an American citizen of African ancestry who then was employed as a campus police officer (with the rank of Sergeant) at Eastern Michigan University;
>
> (2)  Michael Munford, an American citizen of African ancestry who then was employed as Director of Campus Safety at Shorter College in Georgia;
>
> (3)  Melvin Owens, an American citizen of African ancestry who then was employed as Assistant Director of Public Safety at Auburn University;
>
> (4)  John Ward, a Caucasian from Huntsville, Alabama, who then was the owner of a local business; and,
>
> (5)  Plaintiff Dwane Woods.[17]

Horan later explained that Woods was included in the list of five

selected for interview because "he was the only internal candidate

and [UAH] generally tries to include internal candidates, where

they meet the minimum qualifications, in the pool of candidates

selected for interview."[18]

Each candidate was separately interviewed by a number of

persons, including UAH campus police officers, the directors and

---

[16]  Id., ¶ 6-7.  Horan stated that some applicants failed to meet the minimum qualifications, or had salary expectations which were beyond the salary range of the Director position.

[17]  Id.

[18]  Id.

9

other employees in the Facilities and Operations department,[19] the Director of University Housing, David Brown, and Carolyn Horan.[20] Each interviewer was required to use an applicant evaluation form to record their individual assessment of each candidate.  The form identified ten experience and skill factors deemed important for the position:

1.  Appropriate experience (6-10 years);

2.  Supervisory experience (4-6 years);

3.  Certification or ability to become certified as a police officer;

4.  Previous university public safety experience;

5.  Microcomputer experience;  spreadsheet, word processing, etc.;

6.  Experience developing outreach programs;

7.  Oral communication skills;

8.  Written communication skills;

9.  Interpersonal relations skills; and

10.  Overall position fit.[21]

Interviewers rated each candidate on each listed characteristic

---

[19] The "directors and other employees" included an administrative assistant, a purchasing assistant, a data systems specialist, and the directors of Facilities Maintenance, Grounds Management, Custodial Services, and the Environmental Health and Safety Division.  *Id.*, ¶ 8.

[20] *Id.*

[21] Moore affidavit (doc. no. 57), Exhibit H (applicant evaluation form).

10

utilizing a scale of 1 to 10.  The evaluation form also provided space for the insertion of handwritten comments or observations about each candidate.  Finally, the form requested that each interviewer record a bottom line assessment:  whether he or she deemed the candidate "acceptable" or "not acceptable."[22]

The five candidates were interviewed at various times between May 27, 1998 and June 18, 1998.  The evaluation forms then were collated and tallied.  The resulting average composite scores were ranked in the following order:  Melvin Owens 93.4; Gary Gailliard 92; John Ward 87.5; Michael Munford 82; and Dwane Woods 58.9.[23] Notably, Woods received an "acceptable" assessment from only two interviewers, while all other candidates were graded "acceptable" by all interviewers.[24]

Upon review of all evaluation forms and applicant materials, Brown concluded that the position should be offered to the individual with the highest composite score, Melvin Owens.[25]  Horan and Jerry Quick (Vice President for Finance and Administration)

---

[22] *Id.*

[23] *Id.*, Exhibits I, J, K, L, and M.

[24] Some handwritten comments on Woods's evaluation forms indicated that he: "didn't seem to see the big picture of this position [or its] importance"; didn't offer "any new ideas ... for the future of the unit"; "provided little [information on] how he would lead the department"; had "unacceptable" writing and verbal skills; lacked "experience managing budgets"; seemed "passive as to any ... progressive initiatives"; and, did "not have the skills required for [the] position." *Id.*, Exhibit M (Woods evaluations).

[25] Brown affidavit (doc. no. 56), ¶ 9.

11

concurred. Owens was offered the position, but he declined. Brown, Quick, and Horan then resolved to offer the position to Gary Gailliard, the candidate with the next highest composite score. Gailliard accepted the position, and began employment as Director of the UAH Department of Public Safety on July 31, 1998.[26]

In November of 1999, Woods filed the instant action claiming that defendant refused to promote him to the position of Director of Public Safety in retaliation for his prior lawsuit and complaints of racial discrimination.

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

A plaintiff who files a motion for summary judgment in an employment discrimination case bears a weighty burden.

> Plaintiffs ... can move for summary judgment, but this is unusual. ... [T]he burden of proving discrimination falls on the plaintiff. To obtain summary judgment in a typical disparate treatment case, therefore, a plaintiff would have to prove that there existed no genuine issue of material fact (1) that the defendant did indeed have a discriminatory motive, and (2) to defeat a mixed-motive defense, that the defendant, absent discrimination would not have made the employment decision at issue. ... Employers, on the other hand, need only point to the absence of a triable question on one element of plaintiff's proof.

2 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law*

---

[26] *Id.*

12

1464 n.22 (3d ed. 1996).

Viewing the evidence in a light most favorable to defendant reveals that there are genuine issues of material fact with respect to whether defendant exhibited a discriminatory animus when determining that Woods should not be awarded the position of Director of Public Safety. Brown testified that he did not consider any of Woods' previous complaints of racial discrimination when determining which applicant to hire as Director of Public Safety.[27] He also stated that his offers of employment to Owens, and then Gailliard, were "based solely on [their] significantly stronger qualifications, as compared with those of Woods, that were evident, in their written and in-person presentations, to me and others in the selection process."[28] Accordingly, plaintiff's motion is due to be denied.

## B. Defendant's Motion for Summary Judgment

A plaintiff must prove three elements to establish a *prima facie* case of retaliation: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *See, e.g., Gupta v. Florida Board of*

---

[27] Brown affidavit (doc. no. 56), ¶ 10.

[28] *Id.*

13

Regents, 212 F.3d 571, 587 (11th Cir. 2000); Farley v. Nationwide Mutual Insurance Company, 197 F.3d 1322, 1336 (11th Cir. 1999); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998); Meeks v. Computer Associates International, 15 F.3d 1013, 1021 (11th Cir. 1994); Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).

An employee has engaged in activity protected by Title VII if he either "opposed any practice made an unlawful employment practice" by Title VII, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC...." Equal Employment Opportunity Commission v. Total System Services, Inc., 221 F. 3d 1171, 1174 (11th Cir. 2000).

If a plaintiff successfully establishes a prima facie case of unlawful retaliation, the burden of production shifts to the defendant, to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If that burden is met, the plaintiff must produce evidence indicating that the defendant's stated reason is a mere pretext for unlawful retaliation. The

14

Eleventh Circuit recently reiterated this burden-shifting framework:

> Once plaintiff establishes a prima facie case [of retaliation] by proving only that the protected activity and the negative employment action are not completely unrelated, the burden shifts to the defendant to proffer a legitimate reason for the adverse action. ... The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate" reason is merely pretext for prohibited, retaliatory conduct.

*Sierminski v. Transouth Financial Corporation*, 216 F.3d 945, 950 (11th Cir. 2000) (citations omitted); *see also, e.g., Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (noting that a plaintiff must put on enough evidence to permit a jury to reasonably "conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct'") (quoting *Cooper-Houston v. Southern Railway Company*, 37 F.3d 603, 605 (11th Cir. 1994)), *cert. denied sub nom.*, *Combs v. Meadowcraft Company*, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). Plaintiff carries the ultimate burden of showing that the defendant intentionally retaliated against him. *Cf. Wright v. Southland*, 187 F.3d 1287, 1292 (11th Cir. 1999) ("In sum, the plaintiff in an employment discrimination lawsuit always has the burden of demonstrating that, more probably than not, the employer took an

15

adverse employment action against him on the basis of a protected personal characteristic.").

Defendant concedes that Woods engaged in protected activity when he filed an EEOC complaint and, subsequently, his first action alleging racial discrimination.  Further, denial of a promotion constitutes an adverse employment action.  *See, e.g., Brooks v. City of Montgomery*, 916 F. Supp. 1193, 1209 (M.D. Ala. 1996) (holding that failure to promote is an adverse employment action under Title VII's retaliation provision).  It thus remains only for Woods to demonstrate a causal connection between his protected activity and the adverse employment action.

The causal link requirement is interpreted broadly by the Eleventh Circuit.

> "To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta*, 212 F.3d at 590 (citation and internal marks omitted); *see also Raney v. Vinson Guard Service, Inc.*, 120 F.3df 1192, 1197 (11th Cir. 1997) ("a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action").  It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression.  *See Raney*, 120 F.3d at 1196.  This awareness, however, may be established by circumstantial evidence.  *See Goldsmith v. City of*

Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). ...

Bass v. Board of County Commissioners, 242 F.3d 996, 1015 (11th Cir. 2001) (emphasis added).

Woods' prior lawsuit against defendant was filed on October 15, 1997, and dismissed on February 17, 1998. Even though the Board has presented evidence that the UAH decisionmakers did not "consider" or "refer to" Woods's EEOC complaint and prior federal court action when determining whether he should be selected to fill the Director vacancy,[29] defendant does not even suggest that such decisionmakers were not aware of Woods's prior protected activity. Accordingly, Woods has established a prima face case for retaliation. See generally Merriweather v. Alabama Department of Public Safety, 17 F. Supp. 2d 1260, 1277 (M.D. Ala. 1998) (stating that the standard for establishing causation is but a "slight" one).

To rebut the presumption of intentional discrimination, defendant offers several legitimate and nondiscriminatory reasons for not offering the Director's position to Woods. Defendant

---

[29] David Brown testified that, "I did not consider any previous complaints by [plaintiff] against the University in my assessment of his qualifications for the Director's job." Brown affidavit (doc. no. 56), ¶ 10. Similarly, Carolyn Horan testified that, "[a]t no time during the selection process ... did anyone involved in that process refer to any prior discrimination complaint by the Plaintiff against the University." Horan affidavit (doc. no. 55), ¶ 15.

contends that Woods simply was not the best qualified candidate. Defendant points out that, after being interviewed and assessed by an independent panel of UAH employees, Woods's composite score was substantially lower than all other candidates. Further, while all other candidates were classified as "acceptable" by all persons who interviewed them, Woods was regarded as "not acceptable" by six of his eight interviewers. In addition, most of the candidates had superior work qualifications in terms of both law enforcement and supervisory experience.[30]  By way of example, Gary Gailliard, the individual ultimately awarded the Director's position, had six years more experience in law enforcement than Woods, and seven years more supervisory experience. Based on the above, defendant has rebutted the presumption of discriminatory retaliation.

To the extent that Dwane Woods contends his qualifications were equal, if not superior, to those of the person ultimately selected as Director of UAH's Department of Public Safety, Eleventh Circuit precedent

> requires a strong showing of a disparity in qualifications in order for an inference of discrimination to arise. As we recently explained: "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted.... '[D]isparities in qualification are not enough

---

[30] *See* Moore affidavit (doc. no. 57), Exhibits I, J, K, L, and M.

18

in and of themselves to demonstrate discriminatory intent
unless those disparities are so apparent as virtually to
jump off the page and slap you in the face.'" *Lee v. GTE
Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000)
(quoting *Deines v. Texas Dept. of Protective and
regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999));
*accord, Alexander v. Fulton County*, 207 F.3d 1303, 1339-
40 (11th Cir. 2000).

*Denney v. City of Albany*, 247 F.3d 1172, 1187 (11tgh Cir. 2001).
Woods has made no such showing.

Further, to the extent that defendant's stated reasons for the

failure of UAH's decisionmakers to offer plaintiff the Director's

position are "subjective" in nature, the Eleventh Circuit recently

made clear in *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir.

2000) (*en banc*), that an employer's use of subjective factors when

making hiring or promotional decisions can be just as valid as

objective reasons, <u>provided</u> the defendant's explanation of its

reasons for the contested employment action are "'clear and

reasonably specific,' so that 'the plaintiff [can] be afforded a

full and fair opportunity to demonstrate pretext.'" *Id.* at 1034

(quoting *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096).

A subjective reason can constitute a legally sufficient,
legitimate, nondiscriminatory reason under the *McDonnell
Douglas/Burdine* analysis. Indeed, subjective evaluations
of a job candidate are often critical to the
decisionmaking process, and if anything, are becoming
more so in our increasingly service-oriented economy.
Take, for example, a job requiring continuing interaction

19

with the public, such as a sales clerk or wait staff position. Attitude, articulateness, and enthusiasm, as well as appearance, can be vitally important in such a job, yet there are few if any ways to gauge such qualitites objectively or from a written application. Interviews give prospective employers a chance to see if an applicant has the kind of personal qualities a service job requires and can be the best way an employer has to determine how a person interacts with others. Body language, tone of voice, eye contact, facial expressions and other non-verbal cues significantly affect the impression an applicant makes on the interviewer and will make on those whose business the company wants to attract or retain, but such things are hard to quantify and articulate with any precision and can only be evaluated subjectively.

Personal qualities also factor heavily into employment decisions concerning supervisory or professional positions. *See Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986) (racial discrimination alleged in layoff from position as engineer) ("Indeed, in many situations [subjective criteria] are indispensable to the process...."); *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) (sex discrimination alleged in failure to promote) ("Subjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions." (citation omitted)). Traits such as "common sense, good judgment, originality, ambition, loyalty, and tact" often must be assessed primarily in a subjective fashion, *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991, 108 S. Ct. 2777, 2787 (1988), yet they are essential to an individual's success in a supervisory or professional position. *See id.* at 999, 108 S. Ct. at 2791 ("It would be a most radical interpretation of Title VII for a court to enjoin use of an historically settled process and plainly relevant criteria largely because they lead to decisions which are difficult for a court to review.") (quoting *Zahorik v. Cornell Univ.*, 729 F.2d 85, 96 (2nd Cir. 1984)).

20

It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation. *See Watson v. Ft. Worth Bank & Trust*, 487 U.S. at 999, 108 S.Ct. at 2791.   To phrase it differently, subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions. Subjective reasons can be just as valid as objective reasons.

Nonetheless, we are mindful of the requirement articulated by the Supreme Court in *Burdine* that "the defendant's explanation of its legitimate reasons must be clear and reasonably specific" so that "the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 258, 101 S. Ct. at 1096 (quotation omitted).   A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion. Continuing our example of a sales clerk or wait staff position, it might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or "because he had his nose pierced," or "because his fingernails were dirty," or "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion — the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.   The burden would then shift back to the plaintiff to offer sufficient evidence for a reasonable factfinder to find that the defendant's reason was pretext for discrimination.

21

*Chapman*, 229 F.3d at 1033-35 (footnote omitted);[31] *see also Denney*, 247 F.3d at 1185-86.

The plaintiff in *Chapman*, like Dwane Woods here, was rejected in large part because of his "poor interview." Even so, the defendant in *Chapman*, like the Board here, "offered a clear and reasonably specific explanation of why ... the decisionmakers[] arrived at that subjective conclusion." *Id.* at 1035. Consequently, the Board's explanation for the choices of UAH's decisionmakers constitutes a legitimate, non-discriminatory reason for the contested employment action, which plaintiff is required to rebut by evidence demonstrating pretext. *Id.* at 1036.

Woods, however, has not produced evidence indicating that defendant's stated reasons are a mere pretext for unlawful discrimination. He does not "squarely challenge the legitimacy of the specific criteria that [defendant] asserts [UAH's

---

[31] The omitted footnote reads as follows:

The warnings in *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1255-56 (11th Cir. 1999) (en banc) (Carnes, J., concurring), about the dangers of "perception prevarication" are not inconsistent with our holding in this case. Those warnings were directed at purely subjective, conclusory impressions of that litigant that are devoid of any objective facts which, if false, can be contradicted by testimony or other evidence. As we explain in the text, where a decisionmaker's subjective reasons is supported by a "clear and reasonably specific" explanation, as required by *Burdine*, there will be objective factors that can be tested against other testimony and evidence.

*Chapman*, 229 F.3d at 1034 n.25 (italics in original).

22

decisionmakers] took into account in deciding who to [offer the Director's position]." *Denney*, 247 F.3d at 1186.  Indeed, Woods produced no evidence tending to demonstrate that he was denied the Director's position for any reason other than those proffered by defendant.  Woods' memorandum in opposition to defendant's motion for summary judgment points to no facts sufficient to withstand summary judgment and contains, at best, mere conclusory allegations that defendant's decisionmakers engaged in discriminatory conduct when they denied him the position of Director of UAH's Department of Public Safety.[32]

> Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer. [A plaintiff's] conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [the employer] has offered ... extensive evidence of legitimate, nondiscriminatory reasons for its actions.

*Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987).

## IV. CONCLUSION

For the foregoing reasons, this court concludes that plaintiff's motion for summary judgment is due to be denied, and

---

[32] Plaintiff's brief in opposition to defendant's motion for summary judgment (doc. no. 60). Moreover, plaintiff's "evidentiary submission" contains nothing more than legal argument.  *See* Plaintiff's evidentiary submission (doc. no. 63).

23

defendant's motion for summary judgment granted. Defendant's motion to strike plaintiff's evidentiary submission and statement of undisputed fact (doc. no. 68) will be denied as moot. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 5th day of June, 2001.

United States District Judge